# WELCH & COMPANY
## *v.*
## CENTRAL SAN CRISTOBAL
and
# UNITED STATES MORTGAGE & TRUST COMPANY
## *v.*
## CENTRAL SAN CRISTOBAL.

Equity, Nos. 940, 947.

### LEASE OF RECEIVERSHIP PROPERTY.

Master's Report—When Confirmed.

1. As a master has a better opportunity for examining the witnesses, his conclusions will be sustained unless shown to be in error.

Receivership—Lease of Property.

2. Where it seems advisable to lease out receivership property rather than operate it, the method employed will be in the discretion of the court. It is not necessary to have public bidding if the court is satisfied that it has received offers for the best interest of the fund. The object of the court is the preservation of the property in receivership until the end of the suit, rather than putting it in shape for possible purchasers to carry on the business for profit.

Lease—Sugar Central.

3. Preserving a sugar central involves physical preservation of the property and keeping its clients or colonos attached to the central. While the usual method of preserving such a central is by having a receiver operate it by means of receiver's certificate, if the receiver can borrow an amount which may not be sufficient, and is doubtful if he can get the plant ready for operation in time for grinding, and on the other hand a proposed lessor offers to assume all expenses and give a fixed rental, the latter course will be preferred.

Receivership—Rental.

4. The question of borrowing on the one hand, and of leasing on

Welch & Co. v. Central San Cristobal.

the other, will be determined by the circumstances of each case, and the court will exercise its discretion for what it deems the best interest of the property.

Due Process of Law—Claim in Receivership.

5. So far as possible everything in receivership is done only after notice to the parties interested, but this cannot always be done. The preservation of the property is the first duty; the effect upon the parties litigant is secondary. Where a party has filed exceptions and they have been considered, and no argument has been asked for, due process of law is not by the courts considering the exceptions without more.

Receivership—Lease.

6. A receivership lease for the operation of the property should be for a short time, provide for the return of the property unimpaired, the bond to be approved by the court, and the execution to be under the supervision of the court through its receiver.

Opinion filed January 21, 1915.

*Mr. H. G. Molina* for Welch & Company.

*Mr. J. Henri Brown* for the United States Mortgage & Trust Company.

*Mr. Louis Banigan* for the Fajardo Sugar Company, Committee of Bondholders, and United States Mortgage & Trust Company.

*Mr. Chas. Hartzell* for the receiver.

*Mr. Francis Neagle* for the defendant.

HAMILTON, Judge, delivered the following opinion:

The matter comes up upon the report of the master filed

VII. Porto Rico—28.

Welch & Co. v. Central San Cristobal.

January 12, 1915, on a proposal by Sosthenes Behn to lease the property and the offer of the West India Sugar Finance Corporation to lend a specified sum to the receiver to operate the property. Exceptions have been filed by the United States Mortgage & Trust Company, by Walter A. Simonds, a claimant of a part of the property, by the Fajardo Sugar Company and others, and the matter now comes up for decision.

1. In the first place, the rule is general that when a matter is referred to the master and he has examined the parties and the witnesses produced, and they have had opportunity to be heard in full, and the master reports one way or the other, the report will be sustained unless the master is shown to be in error. In other words, there is no use of referring a matter to the master if the court is going to start all over again itself. It will hear the report of the master with the idea that it is to be sustained unless it is shown that the master is in error. If the court is in doubt one way or the other, it will sustain the master. That I think is the general rule and is a proper rule.

2. In the second place, however, both of these propositions have been amended since the report of the master, or rather offers have been made to amend. They have not been filed, perhaps, with the clerk, but they have come to the knowledge of the judge. If this was a matter of advertising for bids and the court or any party acting had announced that the highest bid would be accepted, it would be very questionable whether any subsequent amendment ought to be permitted. This, however, is not such a case. It is a case where the court has custody under receivership of a sugar central which is not in operation, where the colonos are said to be dissatisfied and intend or threaten to transfer their allegiance to some other central,

Welch & Co. v. Central San Cristobal.

where there is no money in hand to operate, where there is a mortgage foreclosure pending, and where the court has for some time been trying to find some way of handling the property. So that it is a case of necessity rather than of advertising for bids. The court for a long time received no offers of any kind. The receiver reported several times that he was unable to borrow money or to see any way to get funds to preserve the property. The court announced that it would have to take some step within a few days, and finally the receiver reported an offer from Mr. Sosthenes Behn to lease the property. Immediately upon that being done, and on the day set for hearing matters, there comes an offer from the West India Sugar Finance Corporation to lend money to the receiver. Whether one offer caused the other or not the court does not know, but that is the order of events, and after the West India Sugar Finance Corporation made its offer, Mr. Behn amended his by withdrawing the proviso that a certain amount of sugar must be produced, and after the hearing the West India Sugar Finance Corporation amended its offer by writing to the clerk stating that it would omit the requirement of a prenda upon the personal property of the concern. Subsequently Mr. Behn has amended his offer in certain particulars, and the court thinks that as the matter of amendment is to be allowed on one side and the other, in order that it be just between them, it is at liberty up to the last moment to entertain the best offer that is made. So the court will consider the matter as it stands, and, under those circumstances, it being in a somewhat different shape from what it was before the master, the court will look into it, and not simply affirm the report of the master *pro*

*forma.* Objections are made before the master and since, on both sides.

It seems that unfortunately the plaintiff Welch & Company in the one case thinks that the offer of the West India Sugar Finance Corporation is made by the bondholders and therefore in some way is detrimental to Welch & Company. The West India Sugar Finance Corporation suggests that the offer of Mr. Behn is made by a man who is interested in the sugar business, and that he may intend to shut up the central and draw off the colonos to other centrals in which he may be interested. Then there are other mutual criticisms. The criticisms on the one side, however, about offset those on the other, and all the court can say is that whatever arrangement is made must contain a clause by which its execution and operation are to be carried out under the supervision of the court; that the receiver must have the right and the duty of keeping his eye upon the execution of the agreement, whichever agreement is adopted, and that the court would have the right to look after the interests of the property. It would seem that this would be the only way of covering that situation.

The court cannot go into speculation as to what other things people have in mind when they make definite offers. It can only see to the proper execution of those offers themselves. Now, in determining the question, which is a difficult one, the court has one thing in mind. What the duty of the court is and what the object of the court is, is simply this,—the preservation of the property that is in receivership until the end of the suit. That is the object of every receivership, and it is the object of this one. The court cannot go further and contemplate putting this property in shape for possible purchasers

Welch & Co. v. Central San Cristobal.

to carry on the business at a profit, or for business in any way. It can only keep the property in proper condition and preserve it, so that whoever does buy it can then use it in whatever business it is suited for. The object of a receivership is not to carry on a business. The court has no right to take a piece of property and carry on business for profit. When it undertakes to carry it on for profit, that is really a speculation. It may turn out that the court does not know any more about the business than the people who got into trouble, and, as sometimes has happened, the receivership may be a disaster instead of a benefit. But if the court confines its duties and its powers to preserving the property, keeping it in proper shape, it has then, I think, performed its duty and all that can be asked and all that should be asked. So that is what is in the mind of the court in regard to these two offers. Which will best preserve the property during this litigation so that it can be turned over in good condition to the possible purchasers? Now, as an incident to that, it follows that the court cannot take into account to any large extent the fact that the bondholders say they have organized a syndicate to buy the property. That has not come to the court by way of evidence at all, but, admitting that it is so, to what extent it will be carried out, and if carried out, what difference it should make in the conduct of the court, is not clear. That would be going into a matter *dehors* the record. It would not be looking to the preservation of the property, but to putting it into shape for the benefit of one of the parties to the suit, and the court thinks that is not the main object of the receivership. So that is not at least a controlling factor.

3. The next point would be, supposing then it is the object

of the court to preserve the property, What is the best method of doing so? This being a sugar central, it is necessary to do two things, to preserve the property physically, keep it from deterioration, and to keep it intact in regard to its clients. A central without cane is no central at all. It is a piece of machinery out of place, and to get canes there must be colonos or growers, under the customs prevailing in Porto Rico. So that the matter of preservation must cover those two or three points, and in this case there are two ways possibly under the offers. One is for the receiver to borrow money upon receiver's certificates to keep the property intact, to keep the colonos and whatever else is necessary. That is the offer of the West India Sugar Finance Corporation. The course pursued by courts generally is to preserve the property by means of borrow-ing money evidenced by receiver's certificates, and that would be the course in this case unless there is some defect in the offer or something preferable in the other offer. An objection to the offer of the West India Sugar Finance Corporation, which appears at a glance, is that it is confined to $24,000 while the testimony of the receiver is entirely uncertain as to whether $24,000 is enough; in fact, the tendency of the testimony satisfies the court that it will probably not be enough. It may possibly be enough, but probably not, at least possibly not; so that the offer might not do very much good. It would ad-vance the interests of the property to a certain extent and then possibly leave it in bad shape. It is true that over against that is the possibility, if there should be enough, that the busi-ness would realize a profit and would pay some surplus. The bondholders, who seem to expect to purchase the property, favor this procedure. They favor a loan by this company because

Welch & Co. v. Central San Cristobal.

upon the sale the receiver can turn the property over just as it then stands; but, as seen above, that cannot be taken primarily into account.

Perhaps the most serious question in regard to the West India Sugar Finance Corporation offer is that the receiver in this case on his examination before the master distinctly says that even with sufficient money advanced, he could not get the plant ready for operation before the middle of March. The evidence tends strongly to show that this would be too late to hold the colonos, and that he might very likely be getting ready to grind cane which would not be supplied without litigation. The matter of holding the colonos is of prime importance, and the court would not feel justified in adopting a course which very possibly would not effect that result. If nothing else was offered, it might have to act nevertheless; but there is another offer which must be considered before such a determination is reached.

4. This is the offer of Mr. Behn of a certain amount of money, some $1,500 a month as rent, and a certain share of the profits, if there be any profits. Of course, it will be to the interest of Mr. Behn to make a profit, and the property would share in those profits, if made. At all events, this plan would repair and maintain the property and give a certain amount of rental fixed. The disadvantage of this course would be that any possible purchaser would be met by a lease of the property, and would not be able to go into immediate possession and use the property for his own purposes, which would be the object of a purchaser. He would not buy on general principles except to be able to realize something. That is to be taken into consideration in connection with the facts of this particular

Welch & Co. v. Central San Cristobal.

case. The hearing on the foreclosure of the mortgage has been had and the case has been submitted. Briefs are to be furnished by the 1st of February. Of course, it is possible there may be some application for an extension of time, but assuming that they be furnished at that time, there is a great mass of testimony, and in the ordinary course of business with everything before it, the court could not possibly be expected to reach a decision for some weeks, so that it would be the end of February or the 1st of March before there could be a decree. A sale must be advertised at least a month, and it might be well that in this instance it should be for a longer time, because the parties interested in the sugar business are to a large extent in the States; so that it would probably be some time in March before a sale could be had. There must then be a master's report, which would lie over for twenty days. It would certainly be the 1st of April before there could be any confirmation and deed made, and the chances are, from delays which often occur in large matters, that it would be somewhat later than that; so that it would look as if the grinding season would be far advanced before the purchaser could possibly get the property. The court therefore thinks that the matter of the purchasers taking the property is not to be considered as one of the chief elements in the case, that is, taking it for the purpose of making a profit themselves. This has been met to some extent by an amendment made by Mr. Behn to his offer, by which he will turn the land over as the cane is cleared, and even turn over the property whenever the sale is made and confirmed, at a certain bonus profit on the sugar. Any person taking the property takes it to make money out of it, and would be entitled, after he had gone to all expenses in the matter, to have some-

thing more than a refund to him. So it looks as if that would
meet the occasion about as well as could be expected. On the
whole, therefore, it seems to the court as if it would not be the
best plan to borrow, it being uncertain whether it would be
enough to operate the property, and that the better plan would be
to lease it for what would at least put it in good condition, retain
the colonos, and yield a little income to the property, and that
course will be pursued.

5. The above discussion has dealt with the substance of most
of the exceptions filed to the master's report. The exceptions
of Simonds raise the additional point that his property is being
taken from him without due process. It seems to rest upon
a misconception of what a receivership is and what is the duty
of a court in administering a receivership. The matter of due
process of law does not arise, more especially in the case of
Simonds, who has come in by leave after the receivership had
been established. The object of a receivership is the preserva-
tion of the property pending a dispute between two or more
parties as to its final ownership and disposition. The matter
at present before the court is merely as to which of two possible
methods will better subserve this purpose. The decision of
the court is to intrust it to one who is entirely disinterested in
the property and only for so short a time that it will make little
difference to the ultimate owner, while in the meantime the plan
will take care of the property under the eye of the court and
secure a revenue which is needed. The other plan would be
to take the chances of business operations at a time when the
property is about to change hands, and possibly encumber it
with increased liabilities. The choice between these two is a
matter of discretion with the court, and is not one requiring

Welch & Co. v. Central San Cristobal.

specific notice to the parties. So far as it is possible, everything is done with notice, but the nature of a receivership is such that some things may have to be done without notice. The preservation of the property is the first duty of the court; the effect upon the parties litigant is therefore of secondary consideration. Simonds would seem to have had all the notice that is called for by receivership proceedings, and is not injured by the master's report. It only remains to say that he has had opportunity to present his exceptions, and his exceptions together with all others have been carefully considered. No request was made for argument.

6. The amendments made to both offers since the master's report were the cause of the court going into the above details. They do not seem to change the principle upon which the master's report was based, that under the circumstances of this property a short lease, not exceeding six months according to the amended offer, is preferable to a loan of a certain amount with uncertain results as to central and colonos. The master's report is therefore sustained in principle, and the receiver directed to execute the lease to Sosthenes Behn reported by the master, amended as per copy on file, with the addition that this lease require the operation and maintenance of this property, and its return unimpaired, a bond with sureties or a surety company to be approved by the court in the sum of $10,000, and that the execution and carrying out of the agreement are to be under the supervision of the court. The receiver will see to all necessary details.

The master not having reported as to what economies are possible in receivership management and expenses, he is directed to examine and report upon this as early as possible.

It is so ordered.